LIVINGSTONE *v.* BOARD OF ELECTION COMMISSIONERS OF WAYNE COUNTY.

CONSTITUTIONAL LAW—AMENDMENTS—BALLOTS—ELECTIONS.

When proposed amendments of the Constitution are to be voted on at a general election, the several amendments must be printed on distinct ballots, as well as on ballots separate from those containing the names of candidates to be voted for. It is not a sufficient compliance with the Constitution to print five proposed amendments on one voting slip or ticket. Const. art. 17, sec. 3.

Certiorari to Wayne; Hally, Van Zile, Hosmer, and Codd, JJ. Submitted April 1, 1913. (Calendar No. 25,637.) Decided April 1, 1913.

Mandamus by William A. Livingstone and Carl Bauer against the board of election commissioners of Wayne county to require said board to print constitutional amendments to be voted on at the spring election on separate or distinct ballots. An order denying the writ is reviewed by relators on writ of certiorari. Reversed.

*James A. Murtha* and *John H. Dohrman*, for relators.

*Hinton E. Spalding* and *Carey, Armstrong & Weadock*, for respondent board.

STEERE, C. J. This is a proceeding in certiorari to review the action of the Wayne county circuit court in denying a writ of mandamus applied for by relators, to compel the board of election commissioners of said county to print certain proposed constitutional amendments, to be voted upon at the ensuing spring election, upon separate and distinct ballots, as it is claimed the Constitution requires, and not together upon a single ballot, as it is charged said board is about to do. The following excerpts from the pleadings are sufficient to make clear the issue involved: Relators' petition for mandamus sets up, among other things, as follows:

"(4) Petitioners respectfully represent that in compliance with the provisions of the law and the article of the Constitution above cited (being article 17), it is the duty of said board of election commissioners to have prepared and printed for the use of electors at said forthcoming election, each one of said five proposed constitutional amendments, upon separate and distinct ballots, in order to insure an intelligent, legal, and constitutional popular vote upon said amendments.

"(5) Your petitioners respectfully show that said board of election commissioners of the county of Wayne do not intend to comply with the provisions of the law, as aforesaid, but, on the contrary, at a regular meeting of said

board, held in the city of Detroit, upon March 26, A. D. 1913, said board decided to prepare and have printed all of said five constitutional amendments upon one single ballot, and that such a ballot is now actually in course of preparation by said board and will be presented to the electors of this city on April 7th, next, unless prevented by the mandate of this court."

On an order to show cause, respondent made answer to said fourth paragraph of relators' petition as follows:

"This respondent board deny that the law is as stated in paragraph four of relator's petition."

And to paragraph five as follows:

"This respondent board admit the allegations contained in paragraph five of relators' petition."

On the hearing before said circuit court the writ was denied, it being the opinion of the court that it was not—

"The intention of section 3 of article 17 of the Constitution to provide that each constitutional amendment should occupy a separate ballot, and that the Constitution by another provision continued all laws in force that were not incompatible with its terms; that there is no incompatibility between the statute which regulates the printing of constitutional amendments and the section set forth."

Article 17 of the Constitution of the State of Michigan relates to amendment and revision of the Constitution. Section 3 provides:

"All proposed amendments to the Constitution submitted to the electors shall be published in full, with any existing provisions of the Constitution which would be altered or abridged thereby, and a copy thereof shall be posted at each registration and election place. Proposed amendments shall also be printed in full on a ballot or ballots separate from the ballot containing the names of nominees for public office."

It is the claim of relators that said sentence must be construed as requiring each separate, proposed amendment to be printed on a separate and distinct ballot; while respondent construes it as authorizing, if not requir-

ing, the printing of all proposed amendments upon a single ballot, or piece of paper.

There can be no uncertainty as to what is meant by a "ballot" in this connection. Under the requirements of our Constitution and the present development of the voting machine, constitutional amendments cannot be voted upon by such mechanism, although that process is recognized as voting by ballot. *City of Detroit* v. *Board of Election Inspectors*, 139 Mich. 548 (102 N. W. 1029, 69 L. R. A. 184, 111 Am. St. Rep. 430, 5 Am. & Eng. Ann. Cas. 861). While the courts and lexicographers have given the term a somewhat varied meaning, ranging from the original little ball cast in a box or urn to express a choice, wherein the white ball elected and black rejected, the slip of paper used, the act of voting, the list of candidates voted for, the result of the vote, etc., it is clear that in this case it means the ticket, or slip of paper, sometimes called "voting paper," with the specified printed matter upon it, to be used by the electors in expressing their choice on the propositions proposed.

The sentence under consideration, standing alone, taken literally as it reads, with nothing understood or supplied, is palpably obscure and imperfect. It is in the plural, naming only "proposed amendments," and makes no provision for printing the ballot for a single proposed amendment; though, reading the section as a whole, no one could fail to understand that it was intended to comprehend one or more. Even should we adopt the manifestly unintended and literal meaning, that the sentence is directed only to an election at which more than one amendment is proposed, and is optional with the election commission either to place the amendments all on one ballot or each on a separate ballot, we find the sentence yet imperfect. "Or" is the correlative of "either," and to correctly indicate a choice we must supply the latter word and read the sentence that "proposed amendments shall be printed in full (either) on a ballot or ballots separate," etc. The conjunction "or" co-ordinates the two

words "ballot" and "ballots," disjunctively, so that each in turn must be regarded as the equivalent of and excluding the other.

The dominant thought appropriately expressed in the sentence is that the vote on proposed constitutional amendments shall be distinct and a thing apart from the vote upon candidates for office, and in order that the elector may know just what he is voting upon he must have before him, printed on the separate ballot provided for him, the exact proposition he is exercising his choice in relation to.

One of the most important changes made in the last Constitution was said article 17, relating to the manner of amending it. It is said to have been the result of a compromise between those who advocated the adoption of constitutional amendments by initiative and referendum and those who desired no change from the provisions of the old Constitution pertaining to the matter. The constitutional convention debates and journal show this clearly. Several forms were proposed and debated with spirit and much diversity of views. The form adopted makes radical changes, and goes into details on matters formerly left to the legislature. The phraseology of previous legislation was adopted in some particulars.

Section 3657, 1 Comp. Laws, relative to constitutional amendments, which was in force at the time of the adoption of the present Constitution, provided that:

"Whenever any constitutional amendments or other questions are proposed to be submitted to the electors, the board of election commissioners of each county shall cause them all to be printed on one ballot, separate and distinct from the ballot containing the names of nominees for public office, the substance of each amendment or other question to be clearly indicated upon said ballot," etc.

The early forms proposed touching amendments, out of which article 17 developed, which were introduced and debated before the constitutional convention, followed closely the language of this statute relative to a separate

ballot, and provided that it "be printed in full upon a ballot separate and distinct from the ballot containing the names of nominees for office"; but as different forms were introduced, and the debates progressed, "or ballots" was added. The committee on arrangement and phraseology evidently lost sight of the niceties of phraseology in the heat of the debates on the initiative and referendum, and the sentence was not recast to fully and aptly express the exact object of the alteration. We do not find that this change was discussed before the convention, but it is not unreasonable to infer that when it was decided to enlarge the ballot by printing in full the proposed amendments and any existing provisions to be altered or abrogated, instead of a brief statement of the substance, the thought might naturally suggest itself that, in case there were numerous and lengthy amendments, all printed on a single ballot, it would lead to possible confusion and inconvenience easily avoided by providing separate ballots for each amendment. If, as this sentence reads, all amendments are to be printed on one ballot, the added words "or ballots," intentionally inserted, manifestly for some purpose, while the article was under debate and an exact form providing for all on a single ballot was then before the convention, would become surplusage, absolutely ineffective, and a nullity.

In construing any law it is the rule to give effect to all parts and to all words so far as the language used will permit. To construe this sentence, which, in any view, must be supplied from the context with understood words to complete it according to its evident intent, as implying that, where more than one amendment is to be voted on, "ballots" shall be used, does no violence to the language found, and gives the added words effect. Should we adopt the view that the former statute relative to a single ballot is in force, not being incompatible with the Constitution, we must necessarily construe the constitutional provision as leaving it optional either to use "a

ballot or ballots." In such case, if it is optional with the election board, the writ was properly denied.

Proposed constitutional amendments are to be submitted to the electors "as the legislature shall direct." If the Constitution, by the section under consideration, in any particular makes the manner of submitting optional, it would seem that the option, in the first instance at least, rests with the legislature. That option has apparently been exercised in this instance, and the five separate concurrent resolutions of that body, proposing the five separate and distinct amendments, each directs:

"It shall be the duty of the board of election commissioners of each county to prepare a ballot for the use of the electors in voting on said amendment, which ballot shall be in substantially the following form:" (Giving the form of ballot in accordance with the requirements of the Constitution.)

Whether or not this be controlling as a matter of law, it is at least a legislative interpretation of the provision of the Constitution under consideration.

The attorney general of the State, who is the legal adviser in matters of general public interest, has given the opinion to all inquirers throughout the State that the use of the word "ballots" in this section of the Constitution means that each proposed amendment should be upon a separate ballot, for the reason that otherwise the use of the word "ballots" in the Constitution would be without significance or effect.

As a uniform method of procedure throughout the State is of primary importance, and the use of separate ballots for each proposed amendment has been adopted as the proper construction both by the legislative department and the attorney general's office, and does no violence to the language used, we regard it as a proper one and think it should be observed.

An early adjudication of this question seems desirable, in avoidance of possible complications which might otherwise ensue, and we are constrained to hold, as the ques-

tion is now presented, that each separate proposed amendment should be printed on a separate and distinct ballot, or voting paper.

We discover no requirement in the laws or Constitution which makes it imperative to use a separate ballot box for each amendment.

In the form in which this question is presented, preliminary to an election, asking in effect for direction as to the proper manner of preparing the ballots, we are not called upon to decide whether a failure to observe these requirements in all particulars would in every instance be such an irregularity as to disfranchise the electors.

The judgment is reversed, and the writ of mandamus should issue as prayed for, but without costs.

MOORE, McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD and KUHN, JJ., did not sit.