## HOUSE *v.* CITY OF SAGINAW.

1. MUNICIPAL CORPORATIONS — CHARTER AMENDMENT — SEPARATE STATEMENT OF PROPOSITIONS—STATUTES—PROPERTY TAX LIMITATION—INCOME TAX.

Statute requiring statement of propositions to be voted upon by municipal electors so that each proposition may be voted upon separately was not complied with, where proposition for approval of tax limitation upon real and personal property was coupled with an income tax proposition on ballot as a single proposition, hence, amendment of charter and implementing ordinances were not validly adopted (CL 1948, § 117.21).

2. COSTS—PUBLIC QUESTION—VALIDITY OF CHARTER AMENDMENT.

No costs are allowed in suit to enjoin collection of an income tax by city under charter amendment claimed to be invalid because of failure to comply with statute requiring separate statement of propositions to be voted upon by electors, a public question being involved (CL 1948, § 117.21).

Appeal from Saginaw; Boardman (Harry D.), J., presiding. Submitted April 18, 1952. (Docket No. 70, Calendar No. 45,441.) Decided June 27, 1952.

REFERENCES FOR POINTS IN HEADNOTES

[1] 18 Am Jur, Elections § 181; 28 Am Jur, Initiative, Referendum, and Recall § 20; 37 Am Jur, Municipal Corporations § 214.

[1] Validity of special election as affected by publication or dissemination of matter or information, extrinsic to the question as submitted, regarding nature or effect of the proposal. 122 ALR 1142.

Inclusion in single initiative or referendum petition of proposed constitutional or statutory enactments covering different and distinct subjects. 90 ALR 572.

Applicability of constitutional requirements as to legislation or constitutional amendments, to statutes or constitutional amendments under provision conferring initiative or referendum powers. 62 ALR 1349.

[2] 14 Am Jur, Costs § 91.

Bill by Malcolm G. House, Edward H. Corson and others against City of Saginaw and others to restrain the levying or collecting of an excise tax. Decree for plaintiffs. Defendants appeal. Affirmed.

*Murphy & Murphy,* for plaintiffs.

*W. Vincent Nash, Russell A. Schafer* and *R. James Harvey,* for defendants.

*Amici Curiae:*

*Edward N. Mack,* Adrian City Attorney.

*Dale H. Fillmore,* Dearborn Corporation Counsel.

*H. Winston Hathaway,* Muskegon Assistant City Attorney.

*William J. Balgooyen,* Muskegon Heights City Attorney.

*William A. Ewart,* Pontiac City Attorney.

*Richard H. Paulson,* Kalamazoo City Attorney.

*Roscoe O. Bonisteel.*

*Ballard, Jennings, Bishop & Fraser.*

DETHMERS, J. The city of Saginaw is a home-rule city. On February 5, 1951, section 45 of chapter 7 of its charter entitled "Adoption of Budget, Tax Limit" provided:

"The council shall, by resolution, determine and adopt the budget and make the appropriations for the next fiscal year and shall provide, by resolution, for a tax levy of the amount necessary to be raised

by taxation, which shall not exceed 1 1/2% of the assessed value of all real and personal property subject to taxation in the city, in conformity with and subject to section 21, article 10, of the Constitution of Michigan and the State law pertaining thereto."

The council adopted a resolution proposing to amend said section as follows:

"Adoption of Budget, Tax Limit, Excise Tax

"Sec. 45(a)   The council shall, by resolution, determine and adopt the budget and make the appropriations for the next fiscal year.  It shall provide, by resolution, for a tax levy of the amount necessary to be raised by taxation, for city purposes, on real and personal property, which shall not exceed 1% of the assessed value of all real and personal property subject to taxation in the city.

"Sec. 45(b)   For a period of 10 years beginning January 1, 1952, the council may, by ordinance, provide for the levy and assessment of a specific excise tax of not to exceed 1% per annum upon the following: (1) All salaries, wages, commissions and other compensation earned (a) by residents of the city and (b) by nonresidents of the city for work done or services performed or rendered in the city; (2) the net profits of all businesses, professions or other activities (a) conducted by residents of the city and (b) conducted in the city by nonresidents; and (3) that part of the net profits earned as a result of work done or services performed or rendered and business or other activities conducted in the city by corporations having an office or place of business in the city.

"The council may prescribe by ordinance all things it may deem necessary to exercise effectively the authority herein granted, including but not limited to the following: A penalty of not to exceed 5% of the amount of any unpaid tax for each month or fraction of a month for the first 5 months of nonpayments; interest on any tax not paid when due at not more than the rate of 1/2 of 1% per month; the

collection of any tax, including interest and penalties, herein authorized without respect to said 10-year period and by any method available for the collection of a debt owed to the city; and the examination of books, records and paper necessary to determine tax liability thereunder."

(Section 45[c]. This subsection defined "association," "business," "corporation," "net profits," "nonresident" and "resident.")

"Sec. 45(d)   The net receipts from the tax authorized by section 45(b) hereof, after providing for all costs of collection, shall be accumulated in each fiscal year until March 31st, and as soon thereafter as possible such net receipts shall be distributed as follows:

"First, an amount equal to 3/10 of 1% of the assessed valuation of the real and personal property subject to taxation in the city shall, insofar as funds are available, be transferred to the general fund, and the tax limit created by section 45(a) hereof shall, for the next fiscal year be reduced by the amount so transferred.

"Second, there shall be next set aside, insofar as funds are available, an amount sufficient to defray the debt service requirements of the next fiscal year, including principal and interest, of any bonds issued by the city to finance the construction of a sewage disposal system and appurtenances.

"Third, the amount remaining after the payments above required have been made shall be transferred to a fund to be known as the public improvement fund and shall be used solely for the acquiring, extending, altering or repairing of public improvements which the city may, by the provisions of its charter or the general law, be authorized to acquire, alter or enlarge."

(Section 45[e].   This subsection contained the usual severability provision.)

At an election held on May 22, 1951, the proposed charter amendment was submitted to the qualified electors. Of the 14,462 ballots cast thereon, 9,030 were in favor and 5,432 opposed to adoption. The proposal was submitted upon a ballot which was in form as follows:

"Proposed amendment to section 45 of chapter 7 of the city charter.

"Proposed by resolution of the council, adopted February 5, 1951.

"Shall section 45 of chapter 7 of the city charter be amended: To authorize a tax lavy on property of not to exceed 1%; to authorize for 10 years only an excise tax of not more than 1% on salaries, wages, commissions, other compensation and profits of both residents and nonresidents; and to provide for the use of the net proceeds of such excise tax to reduce property taxes, defray annual sewage disposal bond expense, and for public improvements?

"Yes ( )

"No ( )"

The plaintiffs are residents and electors of the city of Saginaw; at least 1 of them is a taxpayer on real property therein, and it is admitted that both would be prospective taxpayers under the tax provided for in the charter amendment. Plaintiffs' bill of complaint alleged the invalidity of the proposed tax both because of the form of the charter amendment and because of the tax itself. From decree holding the amendment and implementing ordinance adopted thereunder invalid and void and permanently enjoining defendant city from levying or collecting any tax authorized thereunder, defendants appeal.

Involved is the question stated in plaintiffs' brief as follows:

"Are the charter amendment and implementing ordinance entirely void because the ballot embraced

more than one related proposition and did not state each proposition separately to afford an opportunity for an elector to vote for or against each such proposition, as required by PA 1909, No 279, § 21, as amended by PA 1939, No 279, being CL 1948, § 117.21 (Stat Ann 1949 Rev § 5.2100)?"*

The mentioned section of the statute reads in part as follows:

"The form in which any proposed charter amendment or question shall appear on the ballot, unless provided for in the initiatory petition, shall be determined by resolution of the legislative body, and when provided for by the initiatory petition, the legislative body may add such explanatory caption as shall be deemed advisable. Any proposed amendment shall be confined to 1 subject and in case a subject should embrace more than 1 related proposition, each proposition shall be separately stated to afford an opportunity for an elector to vote for or against each such proposition."

The effect of the quoted language of the statute has been considered by this Court but once, namely, in *Michigan Public Service Company* v. *Cheboygan*, 324 Mich 309, from which defendants quote as follows, p 334:

"Hence, it was proper to submit the terms of the franchise in the proposition to authorize the issuance of mortgage bonds. If they were to be submitted separately, the authority to issue bonds might be approved while the constitutional requirement for a franchise to set up terms in event of a default might be rejected."

We fail to find in the *Cheboygan Case* support for defendants' claim that the amendment in the instant case was submitted to the electors in conformity with the requirements of the statute. In Cheboygan

---

* This section was also amended by PA 1947, Nos 1 and 87.—RE-PORTER.

there was submitted to the electors, separately, 2 related propositions, which were, as we stated in that case:

"In effect:
"1. The establishment of charter power to acquire and operate a municipal electric utility; and
"2. The establishment of charter power to finance its acquisition."

The objection raised in that case was that the second proposition contained 2 separate proposals, *i.e.*, (a) authority to issue revenue bonds; and (b) provision for a franchise to operate the electric plant and distribution system as security for payment of the bonds in case of default. The answer to that objection was simply that, upon analysis, proposition (2) presented but 1 proposal, namely, the issuance of revenue bonds secured by a mortgage which pledged not only the physical equipment involved, but, as well, a franchise to operate it in the event of default. Submission of the terms of the mortgage was not a proposition separate and apart from the proposal to issue bonds secured by such mortgage.

Defendants also rely on *Kelly* v. *Laing*, 259 Mich 212, decided before 1939 when the statute was amended to require, as now, that related propositions embraced within the same subject be submitted separately. Authorities from other jurisdictions cited by defendants are scarcely in point because they do not involve that precise statutory requirement.

It is clear that subdivisions (a), (b) and (d) of the proposed amendatory section 45 and the condensed statement thereof appearing on the ballot, even were they conceded to involve but 1 subject, embrace 3 separate propositions, namely, (1) a tax limitation on real and personal property; (2) an income tax; and (3) disposition of revenues accruing

from the income tax. In this connection we note defendants' suggestion that the 10-mill tax limitation for city purposes provided for in proposition (1) was meaningless because already in effect in defendant city by virtue of the provisions of PA 1948 (1st Ex Sess), No 44 (CL 1948, § 117.3[g] [Stat Ann § 5.2073(g)]). Plaintiffs deny this because of the express provision of the old section 45 of the charter which fixed a limitation of 15 mills for all purposes, contending that under the express terms of the statute the presence of that provision in the charter prevented the 10-mill provision of the statute from becoming effective in defendant city. A number of theories are advanced concerning the actual legal effect of adoption of proposition (1). The legal questions presented in this connection need not be determined here nor should the electors have been expected to wrestle with them at the polls. Suffice it to say that proposition (1), providing for a tax limitation on real and personal property, even though included in and germane to the general subject of the entire amendment, was, insofar as the proposed income tax is concerned, a related proposition, regardless of whether its adoption by the electors had any legal effect or was merely an idle gesture, placing the stamp of approval on existing law, and was, accordingly, placed on the ballot for no other purpose than to serve as attractive bait to win approval of the income tax. It was the intent and purpose of the statute that, as applied to the facts in this case, the electors should have had the opportunity to adopt or reject the proposed income tax independent of their approval or disapproval of any particular tax limitation on real and personal property. This was denied them on the ballot in question.

Affirmed, without costs, a public question being involved.

Butzel, Carr, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.

North, C. J., did not participate in this decision.