GRAHAM v. MILLER.

1. Constitutional Law—Amendments—Designation on Ballots —Secretary of State.

    The secretary of State is designated by law as the official charged with the duty of submitting amendments to the Constitution to the people whether such amendments are initiated by initiatory petition or by legislative resolution, hence, where the designation on the ballots of the purpose of an amendment, as prepared by him, complied with the provision of the Constitution as to the statement of the purpose of such amendment, it is immaterial that it differed from the statement contained in the legislative resolution, where, in constitutional contemplation, it was surplusage (Const 1908, art 10, § 27; art 17, § 3; CL 1948, § 192.6).

2. Same—Amendment—Purpose.

    The Constitution does not restrict submission of individual amendments thereto to a proposal for but 1 purpose.

3. Same—Amendment—Duality of Purpose.

    An amendment to the State Constitution whereby the State was authorized to borrow money to loan to school districts to finance the building of schools without placing oppressive burdens on taxpayers in any 1 year and permitting greater tax millages than otherwise restricted by the Constitution was not invalid as being an amendment for more than 1 purpose, the easing of the tax limitation being germane to the general purpose of the rest of the amendment, that of facilitating the

References for Points in Headnotes

[1–3] 11 Am Jur, Constitutional Law § 26 et seq.
[4] 11 Am Jur, Constitutional Law § 30.
[5] 43 Am Jur, Public Securities and Obligations §§ 68–70.

financing of school building with the lowest possible burden on the taxpayers, even though the school districts do not borrow from the State (Const 1908, art 10, § 27).

4. SAME—AMENDMENT—PUBLICATION AND POSTING OF ALTERED PROVISIONS.

Amendment to the Constitution for purpose of enabling the State to borrow money to loan to schools and which specifically rendered the 15-mill tax limitation provision of the Constitution inapplicable to school districts who borrowed from the State or elsewhere pursuant thereto was not invalid because the tax-limitation provision was not published in full before the election nor a copy thereof posted in polling places as required by the Constitution when a constitutional provision is altered or abrogated, the tax-limitation amendment being at most merely modified with respect to a special subject (Const 1908, art 5, § 21; art 10, §§ 21, 27).

5. SCHOOLS AND SCHOOL DISTRICTS—BONDS—SECRETARY OF BOARD OF EDUCATION.

Defendant secretary of public school board of education had the duty of signing bonds issued by the district pursuant to constitutional and statutory authority conferred upon the district (Const 1908, art 10, § 27; PA 1955, No 151, No 269, § 683).

Original petition for mandamus by Bert Graham and others, members of the Board of Education of Haslett Public Schools, Counties of Ingham, Clinton and Shiawassee, against Noel L. Miller, secretary of such board, to compel the signing of bonds. The Attorney General intervened for the People of the State of Michigan as a party plaintiff. The Haslett Public Schools, a municipal corporation, intervened as party plaintiff. Submitted May 17, 1957. (Calendar No. 47,353.) Writ granted June 13, 1957, opinion filed June 29, 1957.

*Miller, Canfield, Paddock & Stone (John H. Nunneley* and *Stratton S. Brown,* of counsel) and *Berry, Stevens & Moorman (Claude H. Stevens* and *Milton M. Thompson,* of counsel), for plaintiffs.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *G. Douglas Clap-*

*perton*, Assistant Attorney General, for intervening plaintiff Attorney General in the interest of and for the people of the State of Michigan.

*Snyder & Loomis*, for defendant.

*Amici curiae:*

Michigan Education Association, by *Roscoe O. Bonisteel* and *Roscoe O. Bonisteel, Jr. (Clan Crawford, Jr.,* of counsel).

National Bank of Detroit, by *Dickinson, Wright, Davis, McKean & Cudlip*.

*Chapman & Cutler.*

DETHMERS, C. J.   The board of education of Haslett Public Schools, a public school district, after authorization by its electors, adopted a resolution to borrow money for school construction and issue bonds therefor under authority and pursuant to provisions of Michigan Constitution 1908, art 10, § 27,* and directing the president and secretary of the board to sign them.   The secretary, defendant Miller, refused on the ground that said section of the Constitution is invalid.   Plaintiff board members and the school district as intervening plaintiff invoke the original jurisdiction of this Court, seeking mandamus to compel defendant to sign.   In this case we have the benefit of briefs, not only of counsel for plaintiffs and defendant, but also of the attorney general, intervening in behalf of the people of the State under authority of CL 1948, §§ 14.28, 14.101 (Stat Ann 1952 Rev §§ 3.181, 3.211), and of counsel appearing for several *amici curiae.*

---

* This section was proposed by joint resolution of the 1955 legislature and adopted at the regular election of April 4, 1955.—RE-PORTER.

' Defendant's claim of invalidity is based on 3 grounds. We consider them seriatim.

(1)' Is the constitutional amendment under which plaintiffs sought to proceed (Michigan Constitution 1908, art 10, § 27) invalid because the form of the question submitted to the electors of the State for adoption or rejection of the amendment was changed by the secretary of State from the form set forth in the joint resolution of the legislature authorizing submission of the amendment to the electors? The amendment need not here be quoted at length. Suffice it to say that after authorizing the State to borrow money and to pledge its faith and credit and issue bonds therefor, for the purpose of making loans to school districts for payment of principal and interest on school construction bonds under certain circumstances and conditions, and providing for levying in the districts of certain millage as taxes for repayment of such loans and for the application of such tax collections, and prescribing that the last maturity date of bonds issued by districts thereunder shall be not less than 25 years from date of issue, the amendment concludes with a final paragraph containing the following language:

"The tax limitation prescribed in section 21 of this article shall not apply to tax levies for any future issue of school district bonds issued prior to July 1, 1962, including refunding bonds, and such tax levies shall be without limitation as to rate or amount: Provided, that the bonds of such issue last maturing shall be due in not less than 25 years from date of issuance but may be subject to prior redemption in accordance with the provisions thereof."

The pertinent provisions of Michigan Constitution 1908, art 10, § 21, as amended in 1948, are:

"The total amount of taxes assessed against property for all purposes in any one year shall not exceed one and one-half per cent of the assessed valuation of said property, * * * Provided, that this

limitation may be increased for a period of not to exceed twenty years at any one time, to not more than a total of five per cent of the assessed valuation, by a majority vote of the electors of any assessing district, or when provided for by the charter of a municipal corporation."

The question as set forth in the joint resolution read:

"Shall article 10 of the State Constitution be amended by adding thereto a new section to stand as section 27 thereof, authorizing the bonding of the State in the sum of not to exceed $100,000,000.00 for the purpose of advancing funds to school districts for the acquiring, constructing, enlarging, improving and equipping school buildings and sites and for the funding or refunding of obligations incurred for 1 or more of the aforesaid purposes, and the pledging of the full faith and credit of the State for the payment thereof?"

The question as changed by the secretary of State, and submitted to the electors on the ballot follows:

"No. 3. Shall the Constitution be amended to authorize the State to borrow not to exceed $100,000,-000.00 and to pledge its full faith and credit for the payment thereof for the purpose of loaning school districts moneys with which to pay principal and interest on certain school bonds; to authorize the legislature, subject to limitations, to prescribe the conditions of such loans, including maturities, through at least 25 years subject to prior redemption; and to authorize the levy of taxes without limitation as to rate or amount for the payment of certain school bonds issued prior to July 1, 1962?"

It is conceded on all sides, and we think rightly so, that the form of the question as changed and submitted by the secretary of State was sufficient and fairly apprised the electors of the substance and purpose of the amendment, but that the form of the question in the joint resolution was inaccurate for failure to fully and fairly state the purpose of the

amendment, particularly because it made no reference to the provision of the last paragraph of the amendment, just above quoted, concerning the inapplicability of the tax limitation of article 10, § 21, to certain tax levies. Michigan Constitution 1908, art 17, § 3, as last amended April 7, 1941, relating to submission of constitutional amendments, provides:

"All proposed amendments to the Constitution and other questions to be submitted to the electors shall be published in full, with any existing provisions of the Constitution which would be altered or abrogated thereby, and a copy thereof shall be posted in each polling place. The purpose of any such proposed amendment or question shall be designated on the ballots for submission to the electors in not more than 100 words, exclusive of caption. Such designation and caption shall be prepared by the secretary of State or by such other authority as shall be hereafter designated by law within 10 days after the filing of any proposal and shall consist of a true and impartial statement of the purpose of the amendment or question in such language as shall create no prejudice for or against such proposal."

CL 1948, § 192.6 (Stat Ann 1953 Cum Supp § 6.594) provided:

"Sec 6. Whenever a proposed constitutional amendment or other special question is to be submitted to the electors of the State for popular vote, the secretary of State shall, not less than 35 days before election, certify the same to the clerk of each county in the State and shall at the same time prescribe the form in which such amendment or other special question shall be submitted."

We are not in agreement with defendant's theory that article 17, § 3, governing the submission of constitutional amendments, applies only to those initiated by the people's filing of petitions with the secretary of State and not to amendments proposed by the legislature. Defendant bases this on the pro-

vision of section 3 that the secretary of State shall act "within 10 days after the filing of any proposal" and urges that legislatively proposed amendments need not be filed with the secretary of State. Section 3 does not specify the place of filing. Inasmuch, however, as the secretary of State is designated by law as the official charged with the duty of submitting amendments to the people, regardless of how initiated, it follows that it was contemplated by said section 3 that both kinds need to be filed in his office. No person other than the secretary of State has been designated by law to prepare the designation on the ballots of the purpose of a proposed amendment as provided in said section 3. By its provisions the duty continues to rest, therefore, on the secretary of State. The only constitutionally imposed requirement on the subject thus having been complied with in the instant case and the object of section 3 of fairly acquainting the electors with the purpose of the amendment having been served, it is of no moment that the question prepared and submitted by the secretary of State to the electors in compliance with the constitutional mandate differs in form from that set forth in the joint resolution where, in constitutional contemplation, it was surplusage.

Not in point is *Barnett* v. *Secretary of State,* 285 Mich 494, in which decision antedated the 1941 amendment of article 17, § 3, for the reason that we there held on authority of *Murphy Chair Co.* v. *Attorney General,* 148 Mich 563, that under Michigan Constitution 1908, art 17, § 1 (previously Michigan Constitution 1850, art 20, § 1) the legislature had the power to prescribe the manner in which an amendment is to be submitted to the electors. As we have seen, that is now changed by the 1941 amendment of article 17, § 3, placing on the secretary of State the duty of preparing the designation or statement of the question. Furthermore, in *Barnett* we held that to submit the proposed amendment in full on the

ballot, together with the inconsistent question with respect thereto propounded by the legislature in its joint resolution, as then but no longer required by the Constitution, would have created confusion in the minds of the voters and, if the amendment were adopted, would have left the results in the realm of conjecture. Hence, this Court declined to compel the secretary of State by mandamus to submit the mutually inconsistent proposed amendment and question to the electors. In the case at bar there was no conflict or inconsistency between the amendment adopted and the question as submitted, no possibility of confusion in the minds of the voters as to what they were adopting, nor any uncertainty concerning the result achieved by the favorable vote thereon by the people.

(2) Is the amendment invalid because it covers more than one purpose or subject and was submitted to the electors of the State as a single question on the ballot? Defendant urges that there is duality of purpose in the amendment in that it both provides for loans to school districts and, in addition, makes the 15-mill tax limitation of article 10, § 21, inapplicable to tax levies for payment of certain school bonds. It is claimed that this is fatal to the validity of an amendment submitted as a single question, citing 15 McQuillin on Municipal Corporations (3d ed), § 40.09; *House* v. *City of Saginaw,* 334 Mich 241; and *Livingstone* v. *Wayne County Election Commissioners,* 174 Mich 485. *Livingstone* holds merely that several constitutional amendments may not be submitted on one, but must be placed on separate ballots. Here but one amendment is involved. *House* involved the propriety of submission to the voters as a single proposition of a city charter amendment limiting the ad valorem tax on property and providing for an income tax. Our holding that opportunity should have been afforded to vote separately on the 2 tax proposals, even though they might be held to

be related propositions, was predicated on the provision of the home-rule act, with respect to charter amendments, which reads as follows:

"Any proposed amendment shall be confined to 1 subject and in case a subject should embrace more than 1 related proposition, each proposition shall be separately stated to afford an opportunity for an elector to vote for or against each such proposition." CL 1948, § 117.21, as amended by PA 1955, No 117 (Stat Ann 1955 Cum Supp § 5.2100).

There is no comparable provision in the Michigan Constitution limiting the subject matter of a constitutional amendment or prohibiting the inclusion in one amendment of proposals for more than one purpose. In *City of Jackson* v. *Commissioner of Revenue,* 316 Mich 694, 711, we rejected as without merit the claim that the sales tax diversion amendment (Michigan Constitution 1908, art 10, § 23) was void because it contained proposals for more than one purpose, namely, distribution of 1 cent of the 3-cent State sales tax levy to school districts and local governments and also an annual legislative grant to school districts from the State's general funds according to a fixed formula.

Furthermore, we consider the amendment in question to be in furtherance of but 1 purpose, namely, enabling school districts to finance the building of schools without placing oppressive burdens on taxpayers in any 1 year by making a new source of funds available and permitting issuance of bonds with longer maturities than was theretofore permissible with a consequent greater marketability and lower interest rates and, when previously existing tax-millage limitations have been reached, permitting additional millage increases to assure payment and thus facilitate the sale of bonds, without which the object of the amendment, financing of further school building projects, must fail. To have submitted the 2 phases of the program, State loans to school dis-

tricts and lifting of tax limitations, separately might have resulted in adoption of the former and rejection of the latter, which would have amounted to defeat of the plan altogether inasmuch as authorization of a State loan fund and issuance of longer maturity bonds would have been futile without the assurance of sufficient means for their retirement resulting from easing of the tax limitation. The tax limitation provision is germane to the rest of the amendment.

The fact that removal of the limitation applies to all school bonds of 25-year maturity issued before July 1, 1962, even though the district may not borrow from the State loan fund provided for in the amendment, does not render the tax-limitation provision to that extent not germane to the rest of the amendment, as urged by defendant. The position is perfectly tenable that, the object of the amendment being to aid school districts to obtain additional financing for building schools, the first means to that end provided by the amendment is its provision easing the tax limitation and that the rest of the amendment merely serves the purpose of providing supplemental machinery for implementing the additional financing made possible by the more favorable taxing atmosphere created by the amendment. The fact that districts are thus left with the option of availing themselves of the benefits of the State loan fund renders the provision lifting the tax limitation no less germane to the overall purpose of the amendment to facilitate the financing of school building with the lowest possible burden on taxpayers. In *Norton School District* v. *Municipal Finance Commission,* 339 Mich 96, we held it not necessary to submit to electors as separate questions a proposal for a bond issue to finance new school building and the purchase of a new school bus on the ground that the latter was a necessary incident of the former and both were part of a comprehensive plan to provide for the in-

creased educational needs of the district. The same should be said in the case at bar.

(3) Is the amendment invalid on the theory that it altered or abrogated the 15-mill tax limitation amendment, article 10, § 21, which was not published in full before the election nor was a copy thereof posted in polling places as required in Michigan Constitution 1908, art 17, § 3, with respect to constitutional provisions which would be "altered or abrogated" by the amendment? Does the last paragraph of the amendment, hereinbefore set forth, alter or abrogate article 10, § 21? Again *City of Jackson* v. *Commissioner of Revenue, supra,* is in point, as also is *School District* v. *City of Pontiac,* 262 Mich 338. We there held that the words "altered or abrogated" in article 17, § 3, mean "amended or replaced." Consonant with the reasoning in that respect in those cases we hold that the amendment in question neither amends article 10, § 21, nor does it replace it, although, in the language of the *Pontiac Case,* possibly they may need to be construed in conjunction with each other.

Article 5, § 21, requires acts altered or amended to be re-enacted and published at length. In *Evans Products Co.* v. *State Board of Escheats,* 307 Mich 506, we upheld the constitutionality of the escheats statute (CL 1929, § 13455 *et seq.,* as amended by PA 1941, No 170 [Stat Ann and Stat Ann 1943 Cum Supp § 26.1021 *et seq.*]),* even though it altered or amended some sections and repealed others of the general statute of limitations without republishing the altered sections in full. We said (p 537):

"The Michigan escheat law is an act referring to a special subject and is complete in itself. It removes escheat proceedings from the operation and effect of the general statute of limitations and there-

---

* These provisions have been repealed. See CJ 1948, § 567.75.— REPORTER.

by merely modifies the effect of the statute of limitations only to that extent."

The situation at bar is analogous. The provisions of article 10, § 21, are left intact, to be applied generally in situations to which they have application. The new amendment, article 10, § 27, refers to a special subject, is complete in itself and, at most, merely modifies article 10, § 21, with respect to that special subject. It does not amend or replace article 10, § 21, and accordingly publication of the latter in full was not required. Defendants say that the purpose of requiring the publication not only of the proposed amendment but also of all constitutional provisions to be altered or abrogated thereby is to thoroughly inform the electorate of what is being presented. That purpose was fully accomplished here by publishing of the proposed amendment, the last paragraph of which, above quoted, expressly refers to article 10, § 21, and specifically provides that its limitation shall not apply to mentioned tax levies.

See the *City of Jackson Case* for discussion of considerations to be observed by courts in determining the validity of constitutional amendments already adopted by the people.

We hold article 10, § 27, lawfully adopted and valid. Under its implementing act* and particularly section 683 of the school code of 1955 (Act No 269) (CL 1948, § 340.683 [Stat Ann 1955 Cum Supp § 15.3683]) the duty reposes on defendant secretary to sign the bonds. The writ of mandamus will issue as prayed.

SHARPE, SMITH, EDWARDS, VOELKER, KELLY, and CARR, JJ., concurred with DETHMERS, C. J.

BLACK, J. *(concurring in issuance of writ)*. The proximate cause of this altogether exigent litigation

---

* See PA 1955, No 151 (CL 1948, § 388.951 [Stat Ann 1955 Cum Supp § 3.424(21)]).—REPORTER.

was set in motion on Wall Street. We are advised, by plaintiffs:

"It is frankly conceded that this is a test case made necessary because one school district in the State of Michigan which sought to issue bonds in accordance with the provisions of section 27, article 10, of the Michigan Constitution (1908), sought to obtain an approving legal opinion thereon from a firm of bond attorneys in the city of New York (Wood, King & Dawson), and said attorneys refused to approve the bonds until the questions specified in the secretary's letter were passed upon by this Court. This refusal has been generally publicized, and as a result an unmerited and unjustifiable legal cloud has been cast, not only upon the bond issue involved in this case, but upon approximately $200,000,000 of such bonds issued in the 2-year period since the adoption of said constitutional amendment and upon the many millions of dollars of such bonds proposed to be issued in the near future to meet the vastly expanding needs for new school facilities. The marketability of said bonds has been adversely affected, and will remain so until the questions raised are decided. The great public importance of this case and an early resolving of the questions raised is thus apparent."

Representations like this bring us to general quarters. We hasten to determine that which, in this truly adversary case involving the Constitution, announcedly stands in doubt.

I subscribe to conclusion that the voted form of question fairly apprised the electors of the substance and purpose of the amendment we know as section 27. I agree also with the attorney general that the Constitution does not forbid submission of an amendment embracing more than one subject or purpose. But there is more to be said when we arrive on ground occupied by claim that the amendment failed of adoption for want of publication, "with any existing provisions of the Constitution which would be altered or abrogated thereby," as required by amend-

ed section 3 of article 17, Const 1908, and I suggest that all 3 of the posed questions may and should be answered by unequivocal statement that the election of April 4, 1955, and the officially certified result thereof, cured once for all the claimed defects in submission of section 27 if, in actuality, such were defects.

Whether section 27 did alter or abrogate then existent provisions is a serious question. As this Court has already seen by experience, we cannot—on record and briefs before us—pronounce categorical negative answer thereto without breeding future trouble. As indicated above, I prefer a more direct, and definitely safer, way to present decision.

*School District* v. *City of Pontiac,* 262 Mich 338, is cited by my Brother in support of construction of the quoted words "altered or abrogated" as meaning "amended or replaced." There it was held that the so-called 15-mill amendment "did not specifically and definitely 'alter or abrogate' any other provision of the Constitution" (p 345 of report). Nevertheless, when put to the test 13 years later in a case admitting no room for side step (*Thoman* v. *City of Lansing,* 315 Mich 566), our Court was compelled to admit that the 15-mill amendment stood in direct collision with the uniformity clause (article 10, § 3, Const 1908) with result (p 577 of report); "Obviously under the circumstances of this case the 2 noted constitutional provisions are in conflict; and it becomes impossible to literally comply with both." It was consequently held that the earlier provision must yield to the later (p 579 of report).

I stand against the possibility, nay probability, that we may be compelled in yet unconceived case to admit again, that what we say today does not alter or amend, actually does so. Post-election attacks on voted amendments of our Constitution may and should, in my view, receive consideration without the

necessity of determination of such question, and I turn now to the indicated alternative.

In *City of Jackson* v. *Commissioner of Revenue,* 316 Mich 694, thorough, exhaustive and decidedly adversary briefs were submitted for and against doctrine that the requirements of sections 2 and 3 of article 17 appear in juridically different light after election day than before. Admittedly, authorities dealing with this point are divisive. Some States hold with rigidity that procedures established for the amendment of their constitutions are mandatory and must be strictly followed in order to effect a valid result; whereas others with equal force and convincing thought adhere to the view that where, as here, the adjective question or questions are not raised until after the people have voted approval of the questioned amendment of their organic law, the election cures procedural defects. (See texts and annotations 11 Am Jur, Constitutional Law, § 32, p 638; 12 CJ, Constitutional Law, § 24, p 688; 16 CJS, Constitutional Law, § 7, p 35.) I think our Court—in *City of Jackson* v. *Commissioner of Revenue, supra,* at pages 716–718 of report—intended to adopt the latter view, yet did so in words of such mincing uncertainty as to encourage if not foster post-election litigation. If this be so, it is high time that we declare ourselves in plain and artless words. Why not, say I, follow Florida's lead, quoted this way from *Sylvester* v. *Tindall,* 154 Fla 663, 668, 669 (18 So2d 892) (followed in *Pearson* v. *Taylor,* 159 Fla 775 [32 So2d 826]) :

"While it is true that the procedure set forth in section 1 of art 17* is mandatory and should be followed (*Crawford* v. *Gilchrist,* 64 Fla 41 [59 So 963, Ann Cas 1914B, 916]; *Gray* v. *Childs,* 115 Fla 816 [156 So 274]), this Court has recognized the almost universal rule that once an amendment is duly proposed and is actually published and submitted to a vote of the people and by them adopted without any

* Florida constitution, 1885.—Reporter.

question having been raised prior to the election as to the method by which the amendment gets before them, the effect of a favorable vote by the people is to cure defects in the *form* of the submission."?

This is what was known, in brief and oral argument of the *City of Jackson Case,* as the "election-cures-error" doctrine. It originates in the leading authority known as *The Constitutional Prohibitory Amendment Cases,* 24 Kan 700. There, in an opinion written by Mr. Justice Brewer, later a member of the Federal supreme court, the supreme court of Kansas considered post-election objections that the proposed amendment had been incorporated into the legislative journal by reference only (contrary to requirement) and that the legislature had failed to provide required election machinery for submission. The essence of the court's ruling appears in the report as follows (p 711):

"Again, in constitutional changes, the popular voice is the paramount act. While to guard against undue haste and temporary excitement, to prevent unnecessary and frequent appeals for constitutional amendments, the assent of two-thirds of the legislature is prescribed as a condition precedent, yet after all, that which determines constitutional changes is the popular will. This is a government by the people, and whenever the clear voice of the people is heard, legislatures and courts must obey."

As the supreme court of Pennsylvania has ruled, a new status arises once the people have approved a properly resolved constitutional amendment (*Armstrong* v. *King,* 281 Pa 207 [126 A 263]). That court went on to say (p 217) that such approval "is, in effect, though not technically, a judgment of the electorate, and a collateral attack upon it should not be allowed." If this be right, and I suggest it is, questions justiciable prior to election day are merged in the political decision of the people, once that decision is duly certified.

To recapitulate: Considering the necessarily variant and altogether numerous amendments we have voted into our Constitution since 1908, I respectfully suggest that it is quite improvident to say—until the issue is squarely presented in yet unconceived case— that a given amendment does not alter or abrogate (or, if one pleases, amend or replace) an existing provision or provisions. I prefer to warm the blood of our opinion in *City of Jackson* by moving for declaration that this Court will not, after the fact of resolved and fairly published submission of an actually ratified amendment, hear claims that the latter is invalid for want of meticulous compliance with the procedural requirements of article 17. Section 27 thus becomes a valid part of the Constitution and, under *Thoman's* rule, it will prevail if there be conflict—which we need not presently decide—with earlier provisions.

Who is to know, absent such forthright declaration, what apparently mature and sound amendment of our Constitution is due next for litigatory test of its rightful existence? What time limitation ticks against such attacks? Does not the present onslaught, conceived as it was over distant and profound counsel tables, come more than 2 years after the fact of ratification, and uniform acceptance and utilization, of section 27 by Michigan? Is not a relevant rule of certainty in order, that all may know what is and what is not in our Constitution? Such a rule is available by respectable precedent, and *City of Jackson* haltingly started us toward acceptance thereof. Its adoption tried in that case, it is time to grapple Florida's declaration to our scroll with hoops of legal steel.

For stated reasons, I support issuance of the writ as prayed.

Smith and Voelker, JJ., concurred with Black, J.